IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JASON M. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 11-2484-RDR |
| | ) |
| JON C. "CHRIS" WILLIS, ADAM BUSH, | ) |
| MIKE WILSON AND CITY OF | ) |
| ATCHISON, KANSAS | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This is an action brought pursuant to 42 U.S.C. § 1983 alleging a violation of plaintiff's Fourth Amendment right against unreasonable detention and excessive force while plaintiff was working as a private process server attempting to serve process upon the wife of an off-duty City of Atchison, Kansas police officer at her home.  Plaintiff has named the following defendants in this case:  the City of Atchison; Mike Wilson, the Chief of Police for the City of Atchison; Jon C. "Chris" Willis, the off-duty police officer; and Adam Bush, an Atchison police officer who was called by Willis to the scene. This case is before the court upon defendants' motion for summary judgment.  Doc. No. 27.

I.  Standards for summary judgment

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a).  The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).  From this viewpoint, the court attempts to determine whether a reasonable jury could return a verdict in favor of the non-moving party.  Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).  "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy, 480 F.3d at 1197.  In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

II.  Uncontroverted facts

        The following factual recitation shall be treated as uncontroverted only for the purposes of the current motion before the court.

        On April 1, 2011, at approximately 6:00 p.m., plaintiff arrived at the home of defendant Willis in Atchison, Kansas. Plaintiff was there to serve civil process upon Rusty Willis, the wife of defendant Willis.  She was not home at that time.

The civil process was related to a civil case filed in Johnson County state court in which Rusty Willis was a defendant.  She was also the resident agent for another defendant in that case.

Plaintiff was dressed in a Polo shirt and blue jeans.  He was carrying a FedEx delivery envelope with him, but he did not tell defendant Willis that he was a FedEx delivery employee or that he was there to serve Rusty Willis with civil process.  He only said that he needed to make a personal delivery and asked when Willis' wife would be home.  Defendant Willis said that his wife would be home in about thirty minutes and asked if he could sign for whatever plaintiff was delivering.  Plaintiff said that the delivery required Rusty Willis' personal signature and said that he would come back later.

Plaintiff returned to his vehicle and was filling out paperwork when defendant Willis approached and again asked what he was delivering.  Plaintiff responded that it was for Rusty Willis and that she would have to sign for it. Plaintiff drove away and attempted to serve process upon Sharon Baldridge (a relative of Rusty Willis) who was a defendant in the same case. She also was not home.  Plaintiff returned to the Willis home sometime between 6:41 p.m. and 6:49 p.m. to again attempt to serve process upon Rusty Willis.

Defendant Willis answered the door.  He was on the telephone to defendant Bush and requested Bush to come to the

Willis home.   Defendant Willis told plaintiff that he knew plaintiff was not a FedEx delivery person and demanded identification.   Plaintiff refused to provide defendant Willis with identification.   Willis told plaintiff for the first time that he was an off-duty police officer.  He further stated that officers were on the way and that plaintiff was not leaving until the police arrived and he was positively identified. Plaintiff asked for defendant Willis to show identification, but Willis refused.   Plaintiff asked why he was being detained. Defendant Willis said that he wanted plaintiff's "information ran."   In a statement made after the events in question, defendant Willis stated that he was not going to let plaintiff leave until plaintiff could be positively identified and his purpose ascertained.

About this time, plaintiff noticed that defendant Willis was becoming irate and he backed onto the lawn of the Willis house.   Plaintiff began to explain that he was not a FedEx delivery person and that he was there to serve civil process on Rusty Willis, which he attempted to show to defendant Willis. Defendant Willis told plaintiff that he could not trust plaintiff based on his actions and that plaintiff was not leaving until he showed identification and proof of his actions to the police.   Plaintiff noticed that defendant Willis was holding a Glock semi-automatic pistol, which was his service

4

weapon for the Atchison Police Department. Defendant Willis directed several profanities at plaintiff and told him that he had better pray to God that he didn't have any warrants.

Then, defendant Bush arrived in uniform and on duty. When defendant Bush arrived, plaintiff told defendant Bush that plaintiff was armed with a firearm for which he had a concealed carry permit. Defendant Bush took possession of plaintiff's firearm. By 6:55 p.m., defendant Bush secured plaintiff's identification and contacted dispatch for a driver's license check. Defendant Willis became extremely irate at plaintiff for bringing a firearm onto his property. He went into his house and returned again holding and waving his gun. He stated that he would or should kick plaintiff's ass and that plaintiff was lucky that he didn't give plaintiff a "beat down," indicating that he had done it before to others as defendant Bush could attest. Defendant Bush nodded "yes." Plaintiff testified that he told defendant Bush on multiple occasions that plaintiff wanted to leave, but he was not allowed to leave. Defendant Willis told him that he couldn't leave. According to a statement written by defendant Willis:

> [Plaintiff] said that he was not looking for any trouble that he was trying to leave but I wouldn't let him. I told him no, that he couldn't leave. I explained to him that he was running around with a deadly weapon stalking an elementary school teacher [Rusty Willis] and being purposefully deceptive [- -] that he couldn't leave because I am a lot better at my

> job than he is at his.  I was not going to let him
> leave until we had him positively identified and made
> sure he was not a threat.

Doc. No. 28-3 at p. 7.

The background check came back clean at 7:02 p.m. and defendant Bush asked what plaintiff's purpose was.  Plaintiff said that he was there to serve process and showed defendant Bush the court documents.  Defendant Bush said that "around here, the sheriff's department does all the service."  Defendant Bush retained plaintiff's identification and plaintiff's gun. He entered the Willis home and spoke there with defendant Willis.  When defendant Bush came back outside, he told plaintiff that they could not reach Rusty Willis so plaintiff should leave.  Defendant Willis told plaintiff that plaintiff or process servers working for plaintiff's company were not allowed on defendant's property and that any service had to be done through the sheriff's department.  At this point, Rusty Willis arrived and plaintiff was able to serve her with both sets of documents at 7:21 p.m.  Sharon Baldridge also arrived and plaintiff served her with process at 7:28 p.m.  After Baldridge was served with process, defendant Bush escorted plaintiff to his car, returned his gun to him and he was allowed to leave.

Defendant Wilson, the Chief of Police for Atchison, told plaintiff's employer, Kyle Jones, that he had determined after a "full investigation" that defendants Willis and Bush had done

nothing wrong.   Defendant Wilson never spoke with plaintiff about what happened.   Defendant Wilson filed a complaint on behalf of the City of Atchison with the Kansas Bureau of Investigation regarding plaintiff's conduct during the above-described events.   The Kansas Attorney General's Office responded to the complaint and found no grounds upon which to take any action.

There is no dispute that plaintiff and his employer were legally engaged in the service of process in this matter.

III.   <u>A material issue of fact remains as to whether defendant Willis acted under color of state law</u>.

The first argument in the motion for summary judgment is that plaintiff cannot demonstrate that defendant Willis acted under color of state law as required for liability under 42 U.S.C. § 1983, and therefore plaintiff's § 1983 claims of wrongful detention and excessive force must be dismissed as to defendant Willis.

According to the Tenth Circuit, "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." <u>Jojola v. Chavez</u>, 55 F.3d 488, 492-3 (10th Cir. 1995)(interior quotations omitted). The state authority which allegedly "clothes" the actions of a

wrongdoer in a § 1983 action may be actual or apparent.  Id. at 493.  There must be a real nexus between the use or misuse of public authority and the violation allegedly committed by the defendant.  Id.  Plaintiff has the burden of pleading and proving this nexus.  Id. at 494.

     The motion for summary judgment argues that plaintiff cannot carry this burden as to defendant Willis when one views the facts agreed to for the purposes of the motion.  Defendant Willis was not in uniform and told plaintiff that he was off-duty.  He did not display his badge.  He was standing in or near his home during the events in question.  Plaintiff's business at the Willis home directly involved defendant Willis' wife, not defendant Willis.  Nevertheless, defendant Willis was obviously acting out of personal interest, not attempting to intervene in a dispute involving third parties or to enforce the law outside his property.  In addition, the motion contends that plaintiff did not perceive defendant Willis as acting with police authority because he waited to inform anyone that he was carrying a concealed firearm until defendant Bush arrived on the scene.  On the other hand, defendant Willis brandished his service revolver.  He told plaintiff that he was a police officer, albeit off duty.  He summoned a fellow officer to his house.  He arguably implied that the other officer would stand aside if he assaulted plaintiff.  More importantly, on or about

the time that he brandished his weapon and after he told plaintiff that he was an off-duty police officer, defendant Willis told plaintiff he could not leave until his identification was run. This is the kind of command and conduct which is related to the duties of a police officer.

Given the facts before the court at this time, the court believes that a reasonable jury could decide that there was a genuine nexus between defendant Willis' real and apparent police authority and Willis' alleged illegal detention of plaintiff and alleged excessive force against plaintiff. See Pitchell v. Callan, 13 F.3d 545, 548 (2nd Cir. 1994)(courts look to the nature of the officer's act, not simply his duty status); see also, Swiecicki v. Delgado, 463 F.3d 489, 496 (6th Cir. 2006)(nature of the act, rather than clothing of the officer, informs state-actor analysis); U.S. v. Tarpley, 945 F.2d 806, 809 (5th Cir. 1991) cert. denied, 504 U.S. 917 (1992)(actions committed for purely personal reasons do not necessarily fall outside color of state law); Huffman v. County of Los Angeles, 147 F.3d 1054, 1058 (9th Cir. 1998) cert. denied, 526 U.S. 1038 (1999)(same); Coles v. City of Chicago, 361 F.Supp.2d 740, 748 (N.D.Ill. 2005)(the essential inquiry is whether the police officer's actions related in some way to the performance of a police duty). This issue involves a "highly fact specific

inquiry." <u>Coles</u>, 361 F.Supp.2d at 747.  The record before the
court is not compatible with summary judgment on the question.

IV.  <u>Material issues of fact prevent this court from finding
that defendants Willis and Bush are entitled to qualified
immunity against plaintiff's claims of illegal detention</u>.

Qualified immunity protects public officials performing
discretionary functions unless their conduct violates "clearly
established statutory or constitutional rights of which a
reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457
U.S. 800, 818 (1982).  Qualified immunity leaves "ample room for
mistaken judgments," protecting "all but the plainly incompetent
or those who knowingly violate the law."  <u>Malley v. Briggs</u>, 475
U.S. 335, 341 & 343 (1986).  Upon a summary judgment motion,
when a qualified immunity defense has been raised, the plaintiff
must demonstrate that the defendant's actions violated a
constitutional or statutory right and the plaintiff must show
that the constitutional or statutory rights the defendant
allegedly violated were clearly established at the time of the
conduct at issue and under the circumstances in question. See
<u>Koch v. City of Del City</u>, 660 F.3d 1228, 1238 (10th Cir. 2011)
<u>cert. denied</u>, 133 S.Ct. 211 (2012).  If plaintiff makes this
showing then the burden shifts back to the defendant to
demonstrate that there are no genuine issues of material fact
and that he or she is entitled to judgment as a matter of law.
<u>Id.</u>

In this case, plaintiff is asserting the right to be free from unlawful detention. "The Fourth Amendment protects the public from unreasonable searches and seizures, including unreasonable investigatory stops or detentions." U.S. v. Jones, 2012 WL 6582319 *9 (10th Cir. 12/18/2012)(interior quotations and citations omitted). An investigative stop or detention requires that a law enforcement officer, based upon the totality of the circumstances, "'have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Id. (quoting U.S. v. Villagrana-Flores, 467 F.3d 1269, 1273 (10th Cir. 2006)). Courts ask "whether the facts available to the detaining officers, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." Id. at * 12 (interior quotations omitted). The Tenth Circuit has stated that:

> [n]either inarticulate hunches nor unparticularized suspicion will suffice to justify an investigatory detention. However, in determining the reasonableness of an investigative detention, common sense and ordinary human experience must govern over rigid criteria. The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances.

Gallegos v. City of Colo. Springs, 114 F.3d 1024, 1028, (10th Cir. 1997)(citations and quotations omitted). In reviewing the facts and the law, courts ask whether there was "arguable" reasonable suspicion for an investigative detention. If there

was, then the defendant is entitled to qualified immunity. Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012).

Defendant Willis contends that he had an arguable reasonable suspicion that plaintiff was stalking his wife in violation of K.S.A. 21-3438.  This statute, which was repealed and replaced after the events of this case, provided that the crime of "stalking" encompassed:

> Intentionally or recklessly engaging in a course of conduct targeted at a specific person which would cause a reasonable person in the circumstances of the targeted person to fear for such person's safety, or the safety of a member of such person's immediate family and the target person is actually placed in such fear; . . .

> "Course of conduct" means two or more acts over a period of time, however short, which evidence a continuity of purpose.  A course of conduct shall not include constitutionally protected activity nor conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person.

K.S.A. 2009 Supp. 21-3438(a)(1) & (f)(1).

Defendant Willis asserts that he had a reasonable suspicion that plaintiff was stalking his wife because plaintiff "purported" to be a FedEx deliveryman while other circumstances suggested this was just a masquerade.  He also argues that, after the first encounter with plaintiff concluded and plaintiff returned to his car, defendant Willis found plaintiff "hiding at a location" away from the house "staking out" defendant's house.

Finally, defendant Willis contends that plaintiff was nervous and evasive.

Although the parties in this case have agreed upon many facts for the purposes of this motion, the court believes there is a material issue of fact as to whether a reasonable person in defendant Willis' position would have concluded that plaintiff purported to be a FedEx deliveryman or that plaintiff was hiding in his car while "staking out" the Willis house or that plaintiff was nervous and evasive. Upon the record before us, we conclude that material issues of fact preclude the court from concluding that defendant Willis had arguable reasonable suspicion that plaintiff was stalking his wife in violation of Kansas law.

Defendant Bush asserts that he is entitled to qualified immunity because he was relying upon information conveyed by defendant Willis. The fact record before the court, however, does not indicate what this information was. In addition, there is a material fact issue as to when plaintiff was free to leave and whether plaintiff was allowed to leave after the driver's license check was clean. Therefore, the court cannot find that defendant Bush is entitled to qualified immunity merely because he was responding to defendant Willis' call.

Defendant Bush also contends that he had the authority under the law, K.S.A. 75-7c03, to perform a records check upon

any person who carried a concealed handgun in defendant Bush's presence.  Plaintiff does not respond to this contention and it appears valid to the court.  But, there is a material issue of fact as to whether plaintiff was detained after the identification check came back clean.  Accordingly, defendant Bush's valid exercise of authority under K.S.A. 75-7c03 does not immunize him from possible liability upon the facts currently before the court.  Defendant Bush asserts that plaintiff did not object to remaining in Willis' yard and never told defendant Bush that plaintiff no longer was interested in serving process upon Willis' wife.  Plaintiff claims, however, that he told defendant Bush that he wanted to leave, but that Bush maintained possession of plaintiff's handgun and/or identification.  Thus, there is a material issue of fact as to whether the plaintiff's investigative detention ever became a consensual encounter.

In summary, the court finds that material issues of fact prevent the court from finding qualified immunity on behalf of either defendant Willis or defendant Bush.  This finding further precludes the court from granting summary judgment in favor of defendants based on their claim that there was reasonable suspicion to detain plaintiff for investigation.

V.  <u>Summary judgment shall be denied as to the excessive force claim against defendant Willis, but granted as to defendant Bush</u>.

Defendants Willis and Bush contend that excessive force was not used against plaintiff and that they are entitled to qualified immunity against any claim of excessive force. Excessive force is determined under an "objective reasonableness" standard from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Graham v. Connor, 490 U.S. 386, 396 (1989); Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009) cert. denied, 130 s.Ct. 1146 (2010). The totality of circumstances is examined including the following factors: "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Weigel v. Broad, 544 F.3d 1143, 1151-52 (10th Cir. 2008)(quoting Graham, 490 U.S. at 396)). Measuring the reasonableness of force is generally a fact issue for the jury. Buck v. City of Albuquerque, 549 F.3d 1269, 1288 (10th Cir. 2008). As for the brandishing of firearms, the Tenth Circuit has stated:

> The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time.

Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1192 (10th Cir. 2001) cert. denied, 535 U.S. 1056 (2002). The Ninth

Circuit stated in Washington v. Lambert, 98 F.3d 1181, 1187 (9th Cir. 1996): "Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment."

The fact situations in Holland and Washington involved pointing firearms at adults and children, not just brandishing a firearm. The use of force in this case does not appear as severe. Nevertheless, the record upon summary judgment indicates that defendant Willis waved his firearm and cursed at plaintiff while plaintiff was unarmed and compliant. Defendant Willis also implied that he should or would physically assault plaintiff. This occurred when there was another police officer present to mitigate whatever threat might be posed by plaintiff. Under these circumstances, the court finds that summary judgment is not warranted against plaintiff's excessive force claim against defendant Willis. A reasonable jury could find that defendant Willis violated clearly established law prohibiting the use of excessive force. See Smith v. Wampler, 108 Fed.Appx. 560, 565 (10th Cir. 2004)(physically threatening to strike an arrestee with a pistol while directing racial epithets at the arrestee, who was handcuffed on the floor and making no attempt to resist, constituted excessive force although this was not clearly established in 1994 when the incident took place).

Defendants, citing <u>Cortez v. McCauley</u>, 478 F.3d 1108 (10th Cir. 2007), suggest that plaintiff's excessive force must be dismissed because there is no evidence that plaintiff suffered a physical or emotional injury which exceeded a de minimis standard.  The <u>Cortez</u> decision involved two plaintiffs, one who was handcuffed allegedly too tightly and one who was taken from her home by the arm and placed in the locked back seat of a patrol car while her home was searched.  The Tenth Circuit suggested in connection with the handcuffed plaintiff that there was too little evidence of actual injury to support an excessive force claim "<u>if the use of the handcuffs was otherwise justified</u>."  478 F.3d at 1129 (emphasis supplied).  It was in this context that the court stated that "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."  <u>Id.</u>  As for the plaintiff who was placed in the locked patrol car, the Tenth Circuit held that "[p]hysical contact is not required for an excessive force claim - - patently unreasonable conduct is."  <u>Id.</u> at 1131.  Considering such interests as personal security and individual dignity, the court decided there was evidence of an invasion of that plaintiff's "personal security" that could hardly be considered de minimis.  <u>Id.</u> at 1132.  Therefore, an excessive force claim by the plaintiff who was placed in the patrol car

was permitted to go forward despite a claim of qualified immunity.

In the case at bar, plaintiff has made sworn statements that he was fearful and concerned for his safety during his encounter with defendants.  Plaintiff's deposition, pp. 62 and 71.  A reasonable jury on the record before the court could conclude:  that defendant Willis' conduct was patently unreasonable, that it had more than a de minimis impact upon plaintiff's sense of personal security; and that, in spite of the absence of actual physical injury, defendant Willis applied excessive force during the events in question.

As for defendant Bush, plaintiff opposes summary judgment on the grounds that defendants Willis and Bush "taunted [plaintiff] about the numerous 'beat downs' they administer." Doc. No. 31, p. 34.  The factual record before the court does not support a claim that defendant Bush engaged in taunting, only that he nodded his head "yes" when defendant Willis said that Willis had assaulted people before.  Doc. No. 31, ¶ 72.  A reasonable jury would not find that the record supports a claim of excessive force against defendant Bush and the court further finds that defendant Bush would be entitled to qualified immunity against any such claim.

VI.  Summary judgment shall be granted in favor of defendant Wilson and the City of Atchison because there is no causal link

between these defendants and the alleged constitutional injuries.

Defendant Wilson and defendant City contend, and plaintiff appears to agree, that neither defendant can be liable merely because of a supervisory or employer/employee relationship with defendants Willis and Bush.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Dodds v. Richardson, 614 F.3d 1185, 1194-95 (10th Cir. 2010) cert.denied, 131 S.Ct. 2150 (2011).  Defendant Wilson and defendant City further argue that there is an absence of evidence that either defendant affirmatively caused plaintiff's claimed constitutional injuries.  In response, plaintiff asserts that these defendants are subject to liability because they ratified the actions of defendants Willis and Bush when they filed a complaint regarding plaintiff's behavior with the Kansas Attorney General and supported the complaint with statements from defendants Willis and Bush.  Plaintiff further claims that defendant Wilson and defendant City ratified the alleged unconstitutional actions of Willis and Bush when defendant Wilson supported the officers and profanely rebuffed an inquiry by plaintiff's employer sometime after the incident in question.

Plaintiff's response fails to establish an affirmative causal link between the alleged acts of ratification and the alleged unconstitutional conduct.  Such a link is required for

liability.   See <u>Fogarty v. Gallegos</u>, 523 F.3d 1147, 1162 (10th Cir. 2008); <u>Hinton v. City of Elwood</u>, 997 F.2d 774, 782 (10th Cir. 1993).   Because defendant Wilson and defendant City are not alleged to have caused plaintiff's constitutional injuries by any action taken before or after the events on April 1, 2011, plaintiff cannot sue defendant Wilson and defendant City under § 1983.   See <u>Dempsey v. City of Baldwin</u>, 143 Fed.Appx. 976, 986 (10th Cir. 2005)(ratification must be the cause of the alleged violation); <u>Riggs v. City of Wichita</u>, 2011 WL 2970828 *6 (D.Kan. 7/21/2011)(citing <u>Dempsey</u> and other cases for the same rule). Plaintiff does not assert another viable grounds for liability against defendant Wilson and defendant City.   Accordingly, the court shall grant summary judgment in favor of these defendants.

<u>VII.   Summary judgment shall be denied as to the punitive damages claims against defendants Willis and Bush.</u>

Defendants argue that summary judgment should be granted against plaintiff's claims for punitive damages.   Because the court shall grant summary judgment in favor of defendant Wilson and defendant City as to all claims, the court only considers the position of defendants Willis and Bush.

In § 1983 cases, "[p]unitive damages are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"   <u>Searles v. Van</u>

Bebber, 251 F.3d 869, 879 (10th Cir. 2001)(quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). The court shall not grant summary judgment against the punitive damages claims against defendants Willis and Bush because there are questions of fact and credibility which have a bearing on the issue of whether defendants were recklessly indifferent to plaintiff's constitutional rights. For instance, the court does not know what defendant Willis told defendant Bush before and after Bush arrived at the Willis' home. It is also unclear when and how plaintiff communicated his desire to leave the Willis' address, and when and if his encounter with the defendants became consensual. In addition, the length of time and manner in which defendant Willis brandished his weapon is not clear.

VIII. Conclusion

The motion for summary judgment (Doc. No. 27) shall be granted in part and denied in part. The motion is granted as to all claims against defendant Wilson and defendant City. The motion is granted as to the claims of excessive force against defendant Bush. Otherwise, the motion is denied.

**IT IS SO ORDERED.**

Dated this 4th day of January, 2013 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge